**FILED & ENTERED**

AUG 23 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Cetulio   DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>Karmile Yurdumyan<br><br><br><br>Debtor.<br><br>David K. Gottlieb, Chapter 7 Trustee for Karmile Yurdumyan,<br><br>Plaintiff,<br>v.<br><br>Karen Galust Gemilyan<br><br><br><br>Defendant. | CHAPTER 7<br><br>Case No.:  1:17-bk-12333-MT<br>Adv No:   1:18-ap-01030-MT<br><br>**MEMORANDUM RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT KAREN GALUST GEMILYAN**<br><br>Date:          August 15, 2018<br>Time:         1:00 p.m.<br>Courtroom:  302 |

   The lead bankruptcy case was filed on August 31, 2017 by Karmile Yurdumyan ("Debtor") as a voluntary chapter 7. Following 2004 examinations, David Gottlieb, the chapter 7 trustee in this case ("Trustee") filed two separate adversary actions against

parties holding consensual liens on Debtor's primary residence located at 3634 Buena Park Dr., Studio City, CA 91604 (the "Property"). One of those actions is this case against Karen Gemilyan ("Defendant"). Defendant performed construction work on the Property, then owned by Debtor and her ex-husband Neshan Moskovyan ("Neshan"), between Summer 2001 and Fall 2002. After paying $1,000 up-front, Debtor and Neshan failed to make any further monthly payments. Defendant sought the assistance of an attorney to obtain a deed of trust to secure payment for his construction work. Defendant obtained a deed of trust on September 19, 2001 (the "Gemilyan Deed"). The Gemilyan Deed purports to secure "a promissory note [dated] September 16, 2001, and any extension or renewal thereof, in the principal sum of $273,000" ("Promissory Note"). Defendant states that he has since lost the Promissory Note.

The Gemilyan Deed was not immediately recorded, and Debtor and Neshan never made any payments toward the Promissory Note. While the Gemilyan Deed was apparently signed on September 19, 2001, the signatures on that deed were not notarized until March 5, 2005. The Gemilyan Deed was then recorded in the Los Angeles County Recorder's Office on July 7, 2005.

Defendant did not obtain his contractor's license until December 10, 2001. Trustee filed this Motion for Summary Judgment ("Motion") seeking a ruling that Defendant has no claim against the estate, no lien against the property, and owes the estate $1,000 plus interest for the down payment made toward the construction work.

## I.     Standard

In order to succeed on a motion for summary judgment under Federal Rule of Civil Procedure 56, made applicable to adversary actions in bankruptcy by Federal Rule

of Bankruptcy Procedure 7056, the movant must establish the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. In re Aubrey, 111 B.R. 268, 272 (BAP 9th Cir. 1990). The moving party must support its motion with credible evidence, as defined in Rule 56(c), which would entitle it to a directed verdict if not controverted at trial. Id. If a party fails to address another party's assertion of fact, the court may consider the fact undisputed for purposes of the summary judgment motion. Fed. R. Civ. P. 56(e)(2). Substantive law determines which facts are material for purposes of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The court must view all the evidence in the light most favorable to the nonmoving party. In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008). The court may not evaluate the credibility of a witness or weigh the evidence. California Steel & Tube v. Kaiser Steel Corp., 650 F.2d 1001, 1003 (9th Cir. 1981).

The trustee seeks judicial notice of a number of documents that appear to be uncontroverted, so that is taken. Evidentiary objections were also made, and they are discussed below, but generally relate to factual matters that are legally irrelevant. Defendant did not specifically object to the trustee's statement of undisputed facts, but only added additional facts. The trustee's statement of undisputed facts is adopted. The additional facts submitted by defendant are either legal issues, irrelevant, or are facts which are not material to the conclusions reached here.

## II.    Disallowance of Claim as Violating § 7031(a)

Trustee's notice of motion seeks summary judgment for the first and second

claims for relief. The exact theories of the first and second claims for relief are somewhat confusing as articulated in the complaint and in the Motion. How § 544 interplays with Cal. Bus. & Prof. Code § 7031 is not articulated, and the Court could find no legal authority explaining this further. In whose shoes the trustee stands is not stated.[1] The Trustee clarifies in his reply brief that he brings this action pursuant to §§ 502 and 506(d), which appears to be sufficient so that these other issues do not have to be decided at this time.[2]

"Section 502(b)(1) says that if a 'claim' is 'unenforceable' it will be disallowed." Midland Funding, LLC v. Johnson, 137 S. Ct. 1407, 1409 (2017). Section 506(d) provides, with exceptions not applicable here, "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such claim is void . . . ." The phrase "<u>allowed</u> secured claim" in § 506(d) refers to allowance under § 502. Dewsnup v. Timm, 502 U.S. 410, 417 (1992); In re Blendheim, 803 F.3d 477, 485 (9th Cir. 2015) ("The bankruptcy court may decline to allow—or 'disallow'—a claim for a variety of reasons. *See, e.g., id.* § 502(b)(1) (disallowing claims 'unenforceable against the debtor'").

Trustee relies upon Cal. Bus. & Prof. Code § 7031 ("§ 7031") for his argument that Defendant does not have an enforceable claim under applicable state law. The relevant sections of § 7031 are as follows:

<u>§ 7031. Unlicensed contractors prohibited from bringing or</u>

---

[1] Trustee indicated at oral argument that he was seeking to avoid the lien under § 544 due an incorrect spelling of a name on the Deed of Trust and a resulting inability to locate the deed of trust in the County Recorder's grantor/grantee index. Because Trustee's papers mention this theory only once, briefly in the "Summary" section, and because no law or supporting facts are provided, summary judgment will not be granted on this issue.

[2] Defendant argues that a disputed issue of material fact exists as to whether SP22, Inc. is a creditor in the lead case. Because Trustee has standing to bring this action under §§ 323, 502, and 558, whether SP22, Inc. has a claim for purposes of § 544 standing is immaterial to this decision.

<u>maintaining action to recover compensation in any court in state; recovery by person utilizing unlicensed contractor</u>

(a) Except as provided in subdivision (e), no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract regardless of the merits of the cause of action brought by the person, except that this prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029.

(b) Except as provided in subdivision (e), a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract.

(c) A security interest taken to secure any payment for the performance of any act or contract for which a license is required by this chapter is unenforceable if the person performing the act or contract was not a duly licensed contractor at all times during the performance of the act or contract.

(d) If licensure or proper licensure is controverted, then proof of licensure pursuant to this section shall be made by production of a verified certificate of licensure from the Contractors' State License Board which establishes that the individual or entity bringing the action was duly licensed in the proper classification of contractors at all times during the performance of any act or contract covered by the action. Nothing in this subdivision shall require any person or entity controverting licensure or proper licensure to produce a verified certificate. When licensure or proper licensure is controverted, the burden of proof to establish licensure or proper licensure shall be on the licensee.

Cal. Bus. & Prof. Code § 7031. Section 7031 creates both a defense to any action to

enforce a lien or collect a debt brought by an individual who was not a licensed

contractor for the duration of the contract as well as an affirmative claim that can be asserted offensively. As one court aptly put it, "[t]he hiring party is entitled to enforce these remedies through a defensive 'shield' or an affirmative 'sword.'" <u>Alatriste v. Cesar's Exterior Designs, Inc.</u>, 183 Cal. App. 4th 656, 664 (2010).

> The *shield,* contained in section 7031(a), was enacted more than 70 years ago, and provides that a party has a complete defense to claims for compensation made by a contractor who performed work without a license, unless the contractor meets the requirements of the statutory substantial compliance doctrine.

<u>Id.</u> at 664–65. The "sword" remedy, contained in § 7031(b), allows a hiring party to recover amounts paid to an unlicensed contractor. For the purposes of a lien avoidance under § 506, only the "shield" provision of § 7031(a) is relevant.

Defendant does not dispute that he was not licensed for a period of time while he was performing work on the Property. Work on the property commenced "two or three months" before September 19, 2001. <u>Rule 2004 examination of Karen Gemilyan</u>, 42:23-24; 50:11-19.[3] Defendant did not obtain his California contractor's license until December 10, 2001. Defendant does not dispute that at least a portion of the work performed under the contract required a contractor's license; however, Defendant argues that work which required a contractor's license did not begin until "a few days before Christmas." Defendant separately argues that the requirements of § 7031 do not apply because Debtor passed the contractor's exam in September 2001, obtained a

---

[3] While Defendant has not indicated the month that work on the project started, the Gemilyan Deed, dated September 19, 2001, was by Defendant's admission signed after at least two months of non-payment. No jury could reasonably infer that the work began later than July 2001, roughly two months before Defendant states that he passed the contractor's exam; therefore, even if the date that Defendant passed the exam is material, there is no "genuine" dispute of fact about whether Debtor commenced work before passing the exam. <u>Anderson</u>, 477 U.S. at 248.

bond in October 2001, and was told by the "construction or licensing board" that he could begin work. Lastly, Defendant argues that this action is barred by the applicable statute of limitations. The Court will address each of these arguments separately.[4]

### a. Work done before December 10, 2001

Defendant argues that a disputed issue of material fact exists as to whether § 7031 applies because he claims that he did not engage in any work requiring a contractor's license before he obtained his contractor's license. Trustee responds that whether the work performed prior to December 10, 2001 required a contractor's license is irrelevant under § 7031 and accompanying case law. A material fact within the meaning of Fed. R. Civ. P. 56 is one which "might affect the outcome of the suit under governing law." Anderson, 477 U.S. at 256. Putting aside the question of whether the work done prior to December required a contractor's license, the question is whether commencing work on a contract entered into before a contractor obtains its license is subject to § 7031 if the contractor only performs work not requiring a license prior to that time.

The plain language of § 7031(a) prohibits a suit for "performance of any act or contract where a license is required" unless the individual was "a duly licensed contractor at all times during the performance of that act or contract." On its face, the strict licensing requirement applies to the performance of a contract if the contract involves any work requiring a license. It is therefore irrelevant at which point during the completion of a contract work requiring a license is performed. This reading of § 7031(a)

---

[4] At oral argument on the motion, Defendant raised for the first time the defense of laches. Because Defendant did not raise the defense in any of his papers or provide any supporting law or factual theory, the Court will not consider the laches argument.

is consistent with the case law interpreting the statute.

A contractor cannot segregate "acts" performed in furtherance of the contract. <u>WSS Indus. Constr., Inc. v. Great W. Contractors, Inc.</u>, 162 Cal. App. 4th 581, 591–92 (2008), <u>as modified</u> (Apr. 28, 2008). <u>WSS</u> involved a contractor who was unlicensed during the beginning of its performance of a contract requiring a license. WSS applied for a contractor's license on August 20, 2001, and submitted a bid proposal to defendant, Great West Contractors, Inc., on August 28, 2001. <u>Id.</u> at 590. WSS then performed and billed Great West for work completed in October 2001, including $9,000 for drawings and $2,000 for materials ordered for the project. <u>Id.</u> WSS did not obtain its license until December 21, 2001. On Christmas day 2001, WSS submitted an invoice for $192,000 for materials. <u>Id.</u> After WSS obtained its license, Great West and WSS officially signed the contract for the work. <u>Id.</u> The court found that "WSS was not duly licensed at all relevant times. WSS was unlicensed when it submitted its first two invoices for work performed to date, and remained so until December 21, 2001. Because WSS was unlicensed during some period in which it performed work under the contract, <u>it is barred from maintaining this action if *any* of the work it did required licensure.</u>" <u>Id.</u> at 591.

> WSS may not segregate "acts" performed in furtherance of the contract. First, WSS insists it is entitled to recovery because the discrete tasks of ordering anchor bolts and preparing shop drawings do not constitute performance and can be segregated from the subcontract.
>
> A strikingly similar attempt by an unlicensed contractor to segregate certain tasks from an integrated contract to avoid the bar of section 7031 was rejected in *Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, 36 Cal.Rptr.3d 532 (*Banis*). In *Banis,* an unlicensed entity sought to recover for "design services" for a restaurant and

-8-

        market construction project that included preparing electrical and plumbing drawings and specifications, coordination with architects and engineers, and procurement of equipment and materials. (*Id.* at p. 1040, 36 Cal.Rptr.3d 532.) In an attempt to avoid section 7031, the plaintiff argued it had not acted as a contractor in providing design services or, alternatively, that the contract could be segregated into discrete tasks. (*Banis, supra,* 134 Cal.App.4th at p. 1046, 36 Cal.Rptr.3d 532.) The court rejected plaintiff's attempt to parse the contract and concluded the services and materials plaintiff provided were fixtures intended to be and actually physically incorporated into the project. (*Id.* at pp. 1045–1047, 36 Cal.Rptr.3d 532.) In language equally applicable here, the court stated the design plans reflected "coordination of the architect ... and ... engineers. Through its own efforts and those of others, plaintiff thereby undertook to 'construct,' 'alter,' 'add to,' 'subtract from,' and/or 'improve' defendant's project. (See § 7026.) In short plaintiff was a contractor, and section 7031 bars plaintiff's suit for compensation."

Id. at 591. There has been no dispute that at least a portion of the work performed on Debtor's home required a license.

      Defendant argues that work performed prior to licensure, but pursuant to the relevant contract,[5] should not be considered for purposes of § 7031(a). However unfair it may seem, California law is clear that if <u>any</u> work under the contract requires a license, and <u>any</u> work is performed pursuant to that contract before licensure, § 7031(a) applies to prohibit the contractor from maintaining a suit to pursue that action.

---

[5] Defendant has not alleged that the various acts performed by Defendants were pursuant to separate contracts; Defendant admitted in Paragraph 11 of his answer that: "11. [a]fter Neshan and the Debtor purchased the Property they hired Karen as a contractor to perform work on the Property." Defendant's statement of facts indicates that the work performed on the property included dirt removal, painting, roof replacement, kitchen cabinets, and plumbing. While Defendant argues that certain work, specifically soil removal, did not require a license, Defendant does not argue that such work was done under a separate agreement. See, e.g. Phoenix Mech. Pipeline, Inc. v. Space Expl. Techs. Corp., 12 Cal. App. 5th 842, 853 (Ct. App. 2017). See also Rule 2004 examination of Karen Gemilyan, 52:10-16 ("Then when I see they don't pay--but the contract is contract. I have to finish the job. I cannot breach the contract.").

Defendant cannot segregate certain acts from the contract as not requiring a license. Notably, Defendant stated that he continued construction on the project for over a year despite not being paid because he was required to finish the contract:

> You know, honestly, I don't remember how many invoices I produced them because I had the scope of the work, almost $280,000. Then when I see they don't pay--but the contract is contract. I have to finish the job. I cannot breach the contract. The day I stop the job, they can sue me. So I know I have to finish the job.

Rule 2004 examination of Karen Gemilyan, 52:10-16. The project began in Summer 2001, and was completed in Fall 2002. The above-quoted section indicates that Defendant continued to work for that entire period, including the work that allegedly did not require a contractor's license before December 10, 2001, because he had entered into a single contract to improve Debtor's home. That contract included work that required a contractor's license and Defendant performed work under that contract while unlicensed. Whether any work requiring a license was actually performed before Defendant obtained a license does not affect the outcome under § 7031(a), and therefore is not a material fact for purposes of Fed. R. Civ. P. 56. Anderson, 477 U.S. at 256.

### b. Passing the contractor exam

Defendant argues alternatively that he "passed the Exam" in September 2001, purchased a bond in October 2001, then was told by the licensing board that he could begin work because he had passed the test. As an initial matter, Trustee has filed evidentiary objections regarding the following statements relevant to this argument:

> 1) "however I passed the Exam well before that date, and I was told by the State of California Contractor's License Board well before that date that I had passed the Exam."

-10-

    2) "I passed my test the first or second week in September, 2001, and was informed automatically that I passed my exam."
    3) "I then asked the construction or licensing Board if I can begin work and they said yes because I had passed the test."
    4) "The Board also informed me it would take a few months to receive my license."

Statements 1, 3, 4, and the second half of statement 2 above are hearsay, and therefore inadmissible under Fed. R. Evid. 801, et seq. The Trustee's motion is sustained as to those objections. The statement that Defendant passed his exam in the first week of September is admitted.

The date upon which Defendant passed a contractor's exam is irrelevant. Even assuming that passing the exam is legally equivalent to being "a duly licensed contractor," Defendant still was not licensed "at all times during the performance of that act or contract" for purposes of § 7031(a) because he began performing work under the contract months before allegedly passing the exam. As discussed in the previous section, licensure for only part of the contract is not relevant to the analysis under the unforgiving requirements of § 7031.

### c. Statute of Limitations as to § 7031(a)

Defendant argues that the Trustee's action is subject to a four-year statute of limitations under C.C.P. § 337. Because the Gemilyan Deed was signed sixteen years prior to this action, Defendant argues that Trustee's action is time-barred. Trustee raises three arguments in response: i) Defendant forfeited any statute of limitations affirmative defense by failing to raise it in his answer, ii) there is no statute of limitations restricting actions under §§ 502 and 506 to determine the validity and extent of a lien; and iii) even if state law were applicable, there is no statute of limitations for actions brought under

-11-

Bus. & Prof. § 7031.

### i. Forfeit of Affirmative Defenses not Raised in Answer

No motion to dismiss was filed in this case. Defendant's answer did not plead any statute of limitations defenses. Federal Rule of Civil Procedure 8(c) states: "(c) Affirmative Defenses. (1) *In General.* In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations." This has been interpreted to mean that "under the Federal Rules of Civil Procedure, a party, with limited exceptions, is required to raise every defense in its first responsive pleading, and defenses not so raised are deemed waived." Morrison v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005) (citing Fed.R.Civ.P. 8(c); Fed.R.Civ.P. 12(b); Fed.R.Civ.P. 12(g)).

> Accordingly, Federal Rules of Civil Procedure 8(c) and 12(b) require that the state raise the statute of limitations in its first responsive pleading to avoid waiving the defense. Fed.R.Civ.P. 8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively ... statute of limitations ... and any other matter constituting an ... affirmative defense"); Fed.R.Civ.P. 12(b) ("Every defense ... shall be asserted in the responsive pleading," except certain specified defenses (not including limitations defenses) that may be raised by motion).

Nardi v. Stewart, 354 F.3d 1134, 1140 (9th Cir. 2004), abrogated on other grounds by Day v. McDonough, 547 U.S. 198 (2006). See also In re Moore, 2014 WL 3570600, at *5 (Bankr. E.D. Cal. July 18, 2014) ("Since Terence did not plead the affirmative defense of statute of limitations, he waived it.").

While the authority above supports Trustee's argument that any defense not raised in the answer is forfeited, the reality of practice in a trial court is less absolute. A party may amend a pleading once as a matter of course within 21 days after serving it.

Fed. R. Civ. P. 15(a)(1). After 21 days has run, a party may amend its responsive pleading by obtaining consent of the opposing party or leave of the court. Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) further specifies that the "court should freely give leave when justice so requires." Id. Courts have used Rule15(a) to justify allowing a party to amend their pleading before a summary judgment motion is decided or to consider an affirmative defense made for the first time upon a motion for summary judgment where the opposing party is not prejudiced. 5 Fed. Prac. & Proc. Civ. § 1278 Effect of Failure to Plead an Affirmative Defense, (3d ed.); Han v. Mobil Oil Corp., 73 F.3d 872, 878 (9th Cir. 1995) ("an affirmative defense based upon a contractual limitations period may be raised for the first time on summary judgment if no prejudice is caused to the nonmoving party."); Sadid v. Vailas, 943 F. Supp. 2d 1125, 1139 (D. Idaho 2013) ("The Ninth Circuit has liberalized this rule, however, holding that affirmative defenses can be raised for the first time in summary judgment motions so long as the plaintiff is not prejudiced.").

> We have liberalized the requirement that defendants must raise affirmative defenses in their initial pleadings. However, defendants may raise an affirmative defense for the first time in a motion for summary judgment only if the delay does not prejudice the plaintiff.

Magana v. Com. of the N. Mariana Islands, 107 F.3d 1436, 1446 (9th Cir. 1997), as amended (May 1, 1997). In contrast, the court in Kaufman v. Unum Life Ins. Co. of America declined to consider the defendant's statute of limitations argument for the first time on summary judgment where the case had been pending for roughly five years and discovery was complete. 834 F. Supp. 2d 1186, 1193 (D. Nev. 2011). At oral argument, Trustee argued that Magana and its progeny had been called into question by Wood v.

Milyard, 566 U.S. 463 (2012). Contrary to Trustee's argument, the Ninth Circuit has repeatedly reaffirmed its adherence to the Magana rule after the ruling in Wood. Hung Lam v. City of San Jose, 869 F.3d 1077, 1087 (9th Cir. 2017); Larson v. Warner Bros Entm't, Inc., 640 F. App'x 630, 633 (9th Cir. 2016); CollegeSource, Inc. v. AcademyOne, Inc., 709 F. App'x 440, 442 (9th Cir. 2017). The Wood court did not hold that affirmative defenses may not be asserted for the first time on summary judgment; instead, the Supreme Court held that, where the State voluntarily waives any statute of limitations argument against a *habeas corpus* petition, the defense cannot be considered for the first time on appeal. Wood at 466.

The Trustee alternatively argues that, under Magana, allowing Defendant to assert a statute of limitations defense is prejudicial to Trustee. This action was filed on March 16, 2018. Trustee's Motion was filed on July 3, 2018. The discovery deadline has not yet run. At oral argument, the Court agreed to further extend the discovery cutoff by one month (to September 30) pending its ruling on the Motion. The first and only substantive action taken in this case has been this Motion; there are no indications that Defendant has been dilatory. Like the facts in Magana, only three months elapsed between Defendant filing his answer and raising the statute of limitations affirmative defense in his opposition to the Trustee's motion for summary judgment. The Court therefore finds that the Trustee has not been unduly prejudiced by Defendant asserting the affirmative statute of limitations defense for the first time in his opposition to the Motion.

## ii. Statute of Limitations for Trustee's Actions

Defendant's argument that Trustee's action is untimely under C.C.P. § 337 does

not specify which claims for relief Defendant believes are time-barred. Defendant argues that "Section 337 of California's Code of Civil Procedure establishes a four-year statute of limitations for most written contracts. The Deed of Trust was signed and recorded well before four years pre-petition." Defendant's Opp., 7:16-18. Defendant argues that, in light of the alleged expiration of the statute of limitation, "Plaintiff has clearly not met its burden of proof." Defendant's Opp., 8:10-12. A statute of limitations is an affirmative defense, and not a substantive requirement of a cause of action. Therefore, Defendant has the burden of proving that that an action is time-barred. Grisham v. Philip Morris, Inc., 670 F. Supp. 2d 1014, 1020 (C.D. Cal. 2009).

Defendant has not provided any analysis or case law to support his assertion that the four-year statute of limitations contained in C.C.P. § 337 applies to Trustee's action. Indeed, given that the nature of § 7031(a) is a defensive shield against actions by a contractor, it's not clear that any statute of limitations would apply. It is only the unusual context presented by this case, where a trustee in bankruptcy is seeking to use the unenforceability of a claim under § 502(b)(1) as a basis to avoid a lien under § 506(d), that the shield of § 7031(a) becomes an offensive weapon.

Section 502(b)(1) provides that, with exceptions not relevant here, "any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 450 (2007). "[Section] 502(b)(1) is generally understood to make available to the trustee any defense available to the debtor under applicable nonbankruptcy law—*i.e.,* any defense that the debtor could have interposed, absent bankruptcy, in a suit on the same substantive claim by the creditor." Id. (citing 4 Collier on Bankruptcy ¶ 502.03[2] [b]). In

a suit by Defendant against Debtor outside of bankruptcy to collect upon Defendant's claim, Debtor would have the benefit of a defense under § 7031(a). No statute of limitations would bar that defense. Thus, no separate statute of limitations exists to object to the claim under § 502(b)(1).

For the reasons set forth above, Defendant's claim is disallowed under § 502(b)(1). Because Defendant's claim has been disallowed, § 506(d) operates to void Defendant's lien. In re Blendheim, 803 F.3d at 489 (This reading "gives the provision the simple and sensible function of voiding a lien whenever a claim secured by the lien itself has not been allowed and ensures that the Code's determination not to allow the underlying claim against the debtor personally is given full effect by preventing its assertion against the debtor's property. *Dewsnup* 's holding clarifies that § 506(d)'s voidance mechanism turns on claim allowance."). Trustee's motion is GRANTED as set forth above.

## II.    Recovery of Compensation Paid under § 7031(b)

Pursuant to the "sword" provision of § 7031(b), Trustee seeks to recover $1,000 (plus interest) in funds paid to Defendant as a down-payment in connection with the contract to perform home construction. As stated above, the Court finds that, under Magana, Defendant is allowed to assert a statute of limitations defense for the first time in his opposition to the Motion. While the defensive "shield" of § 7031(a) is not subject to a statute of limitations, it's unclear whether the "sword" provision of § 7031(b) is subject to a statute of limitations, as Defendant argues. None of the existing case law on § 7031 has not addressed this specific issue, and the parties have not provided sufficient briefing for the Court to make a determination on this undecided issue of state law.

While the Court would be inclined to continue this matter for further briefing, the Trustee indicated at oral argument that he was willing to waive this cause of action to avoid unnecessary delay of the Court's decision. Because the Trustee does not wish to pursue this claim, the Motion will be DENIED as to § 7031(b).

### III. Avoidance of Security Interest under § 7031(c)

As an alternative method for lien avoidance, Trustee's Motion argues that Defendant's lien is void under § 7031(c):

> (c) A security interest taken to secure any payment for the performance of any act or contract for which a license is required by this chapter is unenforceable if the person performing the act or contract was not a duly licensed contractor at all times during the performance of the act or contract.

Case law provides little guidance on this provision. The plain language of the statute, however, leads the Court to the conclusion that the Gemilyan Deed is unenforceable under California law. It is uncontradicted Defendant had Debtor and Neshan execute a deed of trust in favor of Defendant in order to secure payment of a promissory note in connection with the Defendant's services as a contractor. As discussed above, Defendant was "not a duly licensed contractor at all times during the performance of the contract." The Motion is therefore GRANTED as to § 7031(c).

//
//
//
//
//

## IV. Conclusion

For the reasons set above, the Motion is GRANTED as to the action under §§ 502(a) and 506(d) of the bankruptcy code pursuant to Cal. Bus. & Prof. Code § 7031(a); the Motion is DENIED as to § 7031(b) regarding the return of $1,000 plus interest; and the Motion is GRANTED as to § 7031(c).

###

Date: August 23, 2018

*Maureen A. Tighe*
Maureen A. Tighe
United States Bankruptcy Judge